UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

MARTHA E. GARCIA,                                         No. 16-11442-t13

    Debtor.

MARTHA E. GARCIA,

    Plaintiff,

v.                                                             Adv. No. 16-1067 t

P2 PROPERTIES,

    Defendant.

## **OPINION**

The issue before the Court is whether a garnishing creditor is subject to a preference claim when the garnishment was ordered more than 90 days pre-petition, but the wages were earned and paid to the creditor during the preference period. The Court holds that, under such circumstances, the garnishment lien and the paid wages are subject to avoidance under § 547.[1] As the current record does not make clear when the wages were earned by the debtor and paid to the garnishing creditor, the Court will take evidence on that issue before entering a final judgment.

---

[1] All statutory references are to 11 U.S.C.

## I.  FACTS[2]

The Court's ruling in based on the following facts:[3]

Pre-petition, Plaintiff Martha E. Garcia rented a house from Defendant P2 Properties. Apparently Plaintiff defaulted, for on December 17, 2015 Defendant gave Plaintiff a three-day notice of non-payment of rent.

On December 22, 2015, Defendant filed a petition for writ of restitution in state court. The court entered the writ on January 20, 2016, together with a money judgment against Plaintiff. The judgment originally was for $4,084.49, but later was reduced to $1,622.44.

The state court issued a writ of garnishment on February 4, 2016. The garnishee was Plaintiff's employer, the University of New Mexico Hospitals ("UNM Hospitals"). The hospital answered the writ on February 18, 2016.

On April 12, 2016, the state court entered a judgment on the writ of garnishment, ordering UNM Hospitals to pay Defendant $1,622.44 from Plaintiff's garnished wages.

UNM Hospitals paid the Defendant as ordered. On May 15, 2016, a satisfaction of judgment was entered in the case, followed two days later by a release of the writ of garnishment.

A second writ of garnishment was issued by the state court on May 16, 2016. UNM Hospitals answer the writ on June 6, 2016.

---

[2] Some facts are taken from the docket in this case and the state court garnishment action, of which the Court takes judicial notice. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (citing Fed. R. Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade*, 496 B.R. 520, 524 (Bankr. N.D. Ill. 2013), affirmed, 498 B.R. 852 (N.D. Ill. 2013) (a "bankruptcy court [is authorized] ... to take judicial notice of its own docket").

[3] The amount at issue in this dispute is small ($1,991), so the parties asked the Court to decide the issue without a trial, based on the facts that can be gleaned from the record. The Court agreed to do so. Where certain facts are not clear, the Court assumed facts most favorable to the defendant.

Plaintiff filed this bankruptcy case on June 10, 2016.

The 90-day preference period in this case started March 11, 2016 and ended June 9, 2016. UNM Hospitals paid Defendant $1,991 in Plaintiff's garnished wages. The record does not make clear whether all of such wages were earned and paid during the preference period. In addition, the record is unclear whether the entire $1,991 was paid on account of the first writ of garnishment.

Plaintiff exempted the garnished funds under 11 U.S.C. §522(d)(5), and has standing to bring this action pursuant §522(h).

## II. DISCUSSION

### A. Elements of a Preference Claim.

Plaintiff seeks to recover $1,991 in allegedly preferential transfers. A "transfer" is:

> (A) the creation of a lien;
> (B) the retention of title as a security interest;
> (C) the foreclosure of a debtor's equity of redemption; or
> (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with--
> > (i) property; or
> > (ii) an interest in property.

§ 101(54). Section 547(b) provides:

> (b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property--
> > (1) to or for the benefit of a creditor;
> > (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> > (3) made while the debtor was insolvent;
> > (4) made--
> > > (A) on or within 90 days before the date of the filing of the petition; or
> > > (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> > (5) that enables such creditor to receive more than such creditor would receive if--
> > > (A) the case were a case under chapter 7 of this title;
> > > (B) the transfer had not been made; and

> > (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Finally, § 547(e)(3) provides:

> For the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred.

>    B.   The New Mexico Garnishment Statute.

New Mexico's garnishment statute, N.M. Stat. Ann. § 35-12-1 et seq. (1978), provides in pertinent part:

> § 35-12-1.  Garnishment; affidavit and bond; grounds.
>
> . . .
>
>    B. Garnishment may be issued in aid of execution of judgment entered in a civil action in the magistrate court only upon the filing in the action of an affidavit of the plaintiff that the defendant has no property in his possession within this state subject to execution to satisfy the judgment.
>
>    C. Garnishment may be issued in the magistrate court in aid of execution of judgment, which was entered in a civil action in some other court in this state and the unpaid balance of which does not exceed the jurisdictional amount of the magistrate court, only upon the filing of a civil complaint together with a certified copy of the judgment and an affidavit of the plaintiff that the defendant has no property in his possession within this state subject to execution to satisfy the judgment.
>
> § 35-12-2  Garnishment; service on garnishee.
>
>    A. The garnishment shall be served on the garnishee within the magistrate district in the manner provided by law for service of a civil summons in the magistrate court and shall order the garnishee in the action to appear before the magistrate within twenty days from the date of service to answer under oath, as of the date the garnishment was served and also as of the date of his answer:
>
> > (1) what, if anything, he is indebted to the defendant and on what account;
> > (2) what, if any, personal property of the defendant is in his possession; and
> > (3) what other persons, if any, within his knowledge are indebted to the defendant or have personal property of the defendant in their possession.

§ 35-12-3  Garnishment; effect on garnishee.

  A.  Except as otherwise provided in this section, service of a garnishment on the garnishee has the effect of attaching all personal property, money, wages or salary in excess of the amount exempt under Section 35-12-7 NMSA 1978, rights, credits, bonds, bills, notes, drafts and other choses in action of the defendant in the garnishee's possession or under his control at the time of service of the garnishment or which may come into his possession or under his control or be owing by him between the time of service and the time of making his answer. The garnishee is not liable for any judgment in money on account of any bonds, bills, notes, drafts, checks or other choses in action unless they are converted into money after service of the garnishment or he fails to deliver them to the magistrate within the time prescribed by the magistrate.

§ 35-12-4.  Garnishment; answer by garnishee.

  A.  If the garnishee answers under oath that he is not at the time of answer, and was not, at the time the garnishment was served on him, indebted to the defendant or in possession of any personal property of the defendant, and if the garnishee's answer is not controverted within twenty days after being made, the magistrate shall enter judgment discharging the garnishee.
  B. If the garnishee fails to answer the garnishment under oath within twenty days from the date of its service on him, the magistrate may render judgment by default against the garnishee for the full amount of any judgment rendered against the defendant, together with all interest and costs.
  . . .

  D. If the defendant is employed by the garnishee, the magistrate shall render judgment for the plaintiff against the garnishee for the unpaid balance of the plaintiff's judgment against the defendant and order the garnishee to pay to the plaintiff each pay period the defendant's wages or salary, which are not exempt from garnishment under Section 35-12-7 NMSA 1978 and which come due subsequent to the time of answer, until the judgment is satisfied, or, if the employment relationship is terminated, until the garnishee gives the plaintiff written notice that the employment relationship has terminated.

§35-12-9.  Garnishment; wages and salary; lien; priority.

  A.  A judgment entered against a garnishee under Section 35-12-4D NMSA 1978 is a lien on the defendant's wages or salary, which are not exempt from garnishment under Section 35-12-7 NMSA 1978 and which come due subsequent to the time of answer, until the judgment against the garnishee is paid or until the employment relationship is terminated.

C.  What Transfers are at Issue?

The key to resolution of this adversary proceeding is to identify the transfers subject to potential avoidance. As pointed out in the dissenting opinion of *In re Hagen*, 922 F.2d 742 (11th Cir. 1991), there are three transfers in a typical secured transaction:

> one transfer between the debtor and the creditor creating the debt, a second one between the debtor and the creditor creating a security interest, and a third one between the debtor and the creditor paying off the debt. But Section 547 is concerned only with the second and third transfers. *See* Section 547(b)(1) ("transfers to or for the benefit of a creditor"). The dispute before this panel regards the second transfer, which created the security interest.

922 F.2d at 747. Although *Hagen* dealt with a security interest rather than an involuntary lien, the analogy is valid. Here, Plaintiff incurred a debt for rent (transfer one); Defendant obtained a garnishment lien on Plaintiff's wages (transfer two); and Plaintiff made involuntary payments to Plaintiff (transfer three). The avoidability of the second and third transfers is at issue.

D. <u>Avoidability of Involuntary Liens</u>.

In 2005, Congress amended § 101(54) to include "the creation of a lien" as one type of "transfer." This amendment put to rest any doubt about whether liens could be subject to an avoidable preference attack. *See Hopkins v. SunTrust Mortg., Inc. (In re Ellis)*, 441 B.R. 656, 662 (Bankr. D. Idaho 2010) (BAPCPA amended the definition of "transfer" to include the creation of a lien); *In re Bay Area Glass, Inc.*, 454 B.R. 86, 89 (9th Cir. BAP 2011) (citing *Ellis* for that proposition).

Liens subject to avoidance include involuntary liens. *See, e.g., In re Phillips*, 553 B.R. 536, n. 4 (Bankr. E.D.N.C. 2016) (judicial lien that attached within 90 days of the petition date is avoidable under § 547); *In re Syad Industries Corp.*, 58 B.R. 920, 922 (Bankr. S.D.N.Y. 1986) (no doubt that the creation of a judicial lien on property is a transfer contemplated under § 547); *Nelson Co. v. Amquip Corp. (In re Nelson Co.)*, 117 B.R. 813, 816 (Bankr. E.D. Pa. 1990) (same).

E. <u>Cases Holding that the Debtor Cannot Recover Wages Paid to the Garnishing Creditor During the Preference Period</u>.

There is a body of case law, mostly decided before 1992, holding that payments made to a garnishment creditor cannot be avoided, even for wages earned and paid over during the preference period, if the garnishment lien pre-dated the preference period.

1. <u>Salary Novation Cases</u>. Two circuit court cases from the 1980s held that, for § 547 purposes, a garnishment effects an absolute assignment of the debtor's future wages, so payment of the assigned wages during the preference period is not avoidable under § 547, if the garnishment occurred before the preference period. As stated in *In re Coppie*, 728 F.2d 951, 952-3 (7th Cir. 1984):

> Following court orders that the [garnishment] liens on these debtors' future income be continuous, the debtors no longer had a property interest in 10% of their future salaries. *See In re Woodman,* 8 Bankr. 686, 688 (Bkrtcy. W.D. Wis. 1981). Rather, the employers owed that portion of their salaries directly to the garnishment plaintiffs and were liable to the plaintiffs for those amounts if the wages were not withheld pursuant to the court orders. True, the employers were not liable until the wages were actually earned, but once the court orders were entered the debtors were no longer legally entitled to 10% of their future salaries. Because the court orders legally transferred 10% of the debtors' wages to the garnishment plaintiffs, there were no transfers at the time of the actual garnishments in question.

*See also In re Riddervold*, 647 F.2d 342, 346 (2d Cir. 1981) (the same result, using similar analysis); *Momentum Computer Sys. Int'l v. Rigoli (In re Momentum Computer Sys. Int'l)*, 66 B.R. 512 (1986) (following *Riddervold*); *In re Certain*, 30 B.R. 379 (Bankr. D. Conn. 1983) (same).

The salary novation cases have been criticized. For example, in *In re Morehead*, 249 F.3d 445 (6th Cir. 2001), the court stated:

> It is difficult to view a garnishment order as a novation, which is a "substitution by mutual agreement of one debtor for another or of one creditor for another, whereby the old debt is extinguished." *Black's Law Dictionary* 1064 (6th Ed.1990). The novation theory reasons that once the garnishment order has been perfected, the debtor never obtains any right to the garnished funds. This directly contradicts 11

> U.S.C. § 547(e)(3), which states that a transfer cannot occur until the debtor has acquired rights in the property transferred.
>
> It is illogical to find that a debtor may acquire rights in future wages when they have not yet been earned. The mere fact that a creditor perfects a garnishment order on a debtor's future wages does not guarantee that the debtor will ever earn any wages. The debtor retains the choice to work for the garnishee employer, to work for someone else or not to work at all. To the extent the debtor chooses to work for the garnishee employer, any earnings during the 90-day preference period established by 11 U.S.C. § 547(b)(4)(A) that are transferred to the creditor pursuant to a garnishment order are avoidable as a preferential transfer, regardless of the date of perfection of the garnishment order.

249 F.3d at 449.

*In re Jackson*, 850 F.3d 816, 820 (5th Cir. 2017), also questioned *Coppie's* salary novation analysis:

> In our view, the *Coppie* court's conclusion that the debtor's rights in his future wages were "irrevocably transferred" at the time the garnishment order was entered conflicts with § 547(e)(3)'s instruction that no transfer of an interest in property is made before the debtor acquires rights in the property.

      2.    <u>Relation Back Cases</u>. Other courts have denied preference avoidance on the theory that the garnishing creditor's lien on wages "related back" to the pre-preference period garnishment order. *See, e.g. In re Conner*, 733 F.2d 1560, 1562 (11th Cir. 1984) (garnishment lien attached when the garnishment summons was served, not when the wages were paid over to the creditor); *Rigby v. Fleetwing Corp. (In re Bob Rigby, Inc.)*, 36 B.R. 531 (Bankr. M.D. Fla. 1983) (garnishing creditor's right to payment related back to the date the garnishment was served, even though garnished funds were paid within the 90 days). For "relation back" cases other not dealing with wage garnishments, see *In re Hagen*, 922 F.2d 742 (11th Cir. 1991) (attorney charging lien on fund recovered during the preference period was not avoidable because under state law the lien related back to the creation of the attorney client relationship); *Wilkey v. Community Methodist Hospital (In re Edwards)*, 219 B.R. 970 (Bankr. W.D Ky. 1998) (to be avoidable as a preference,

the garnishment order must have been served within the preference period).

F.     Cases Ruling that Wages Garnished During the Preference Period are Recoverable.

In 1992 the Supreme Court handed down *Barnhill v. Johnson*, 503 U.S. 393 (1992), a preferential transfer action. At issue was whether a transfer of funds by check occured when the check was received or when the drawee bank honored it. In holding that the latter date was the transfer date for § 547(b) purposes, the Supreme Court held: "What constitutes a transfer and when it is complete is a matter of federal law." 503 U.S. at 397.

Since *Barnhill*, the strong majority view is that, in wage garnishment preference cases, the date of the avoidable "transfer" is governed by § 547(e)(3) rather than state law, and cannot be before the debtor obtains a right to the wages. A recent case outlining this view is *In re Jackson*. After reviewing the case law and the text of § 547, the Fifth Circuit held:

> The combination of Supreme Court precedent and the overwhelming weight of persuasive authority applying § 547(e)(3) make clear that a debtor's wages cannot be transferred until they are earned. Thus, we hold that a creditor's collection of garnished wages earned during the preference period is an avoidable transfer made during the preference period even if the garnishment was served prior to that period.

850 F.3d at 821. *See also Morehead*, 249 F.3d at 449; *Weinman v. Alter. Rev. Sys., Inc. (In re Stevens)*, 552 B.R. 773 (Bankr. D. Colo. 2016); *Chavez v. Mercury Finance (In re Chavez)*, 257 B.R. 341 (Bankr. D.N.M. 2001); *In re White*, 258 B.R. 129, 133-34 (Bankr. D.N.J. 2001); *In re Mays,* 256 B.R. 555, 563 (Bankr. D.N.J. 2000); *In re Johnson,* 239 B.R. 416, 418 (Bankr. M.D. Ala. 1999); *(Fluharty v. GMAC (In re Polce)*, 168 B.R. 580, 585 (Bankr. N.D. W. Va. 1994); *Taylor v. Miss. Learn. Inst. (In re Taylor)*, 151 B.R. 772, 777 (N.D. Miss. 1993).

Some of the cases avoiding wage garnishments during the preference period are careful to distinguish between the garnishment lien transfer and the wage payment transfer. These cases, which hold that both transfers are avoidable even when the original garnishment predated the

preference period, include *In re Hagen*, 922 F.2d 742, 746 (11th Cir. 1991) (the dissent only; the majority simply applies the relation-back theory); *In re Wade*, 219 B.R. 815 (8th Cir. BAP 1998) (the court makes plain that it is affirming avoidance of the lien transfer); *In re Stevens*, 552 B.R. at 778 (creditor's garnishment lien attached to wages only when earned, and so were avoidable if the wages were earned within the 90-day preference period); and *Larson v. Olympic Finance Co. (In re Larson)*, 21 B.R. 264269-71 (Bankr. D. Utah 1982) (the court is careful to distinguish between the transfer of the lien and the payment of the garnished wages). Other post-*Barnhill* cases reach the same result but are not as careful to distinguish between the two transfers.

The Court rules that in the garnishment cases involving with wages earned and paid during the preference period, both the creation of the garnishment lien and the payment of the garnished funds to the creditor are subject to avoidance. First, the creation of the garnishment lien is avoidable because it arises during the preference period; it is only then that the debtor earns the wages and acquires rights to them. Allowing the garnishment lien to "relate back" to the original, pre-petition garnishment date would ignore § 547(e)(3). The "relation back" rule is from state law, which *Barnhill* made clear must give way to § 547(e)(3).[4]

---

[4] Under the Bankruptcy Act of 1898, two circuit cases held that floating liens attaching to a debtor's accounts receivable arising during the preference period were protected from a preference challenge. *DuBay v. Williams,* 417 F.2d 1277 (9th Cir. 1969); *Grain Merchants of Indiana, Inc. v. Union Bank and Savings Co.*, 408 F.2d 209 (7th Cir. 1969). Those cases reasoned that because the creditors' security interests were perfected prior to the preference period, the floating lien on after-acquired accounts receivable related back to the original date of perfection, and therefore was not a preferential transfer. *Dubay*, 417 F.2d at 1287; *Grain Merchants*, 408 F.2d at 216. Legislative history makes clear that, when it enacted the Bankruptcy Code, Congress intended to curtail the protections given to floating liens by *Dubay* and *Grain Merchants.* The Senate Committee on the Judiciary, in its analysis of the Bankruptcy Reform Act of 1978, stated about § 547(e)(3) that "this provision, more than any other in the section, overrules *DuBay* and *Grain Merchants*." Senate Report No. 95-989, 95th Cong., 2d Sess., S. 2266 (1978). *See also* House Report No. 95-595, 95th Congress, 1st Sess. 374-375 (1977). In tandem with § 547(e)(3), Congress enacted § 547(e)(5), which limits the exposure of the floating lien creditor with security interests in inventory or accounts receivable to the extent their lien position was improved during the preference period.

Second, the payment to the garnishing creditor of wages earned during the preference period also is avoidable, as the payments allowed the creditor to receive more than it would have received if the payments had not been made and the creditor had been paid the same as other general unsecured creditors.

G.  Avoidability of the Transfers in This Proceeding.

The current record does not make clear the following facts that are needed for a final decision:

-- When did Plaintiff earn the $1,991 at issue? Was some of it earned before the preference period, but paid during the preference period? Was a portion both earned and paid before the preference period?

-- Was all of the $1,991 paid on account of the April 12, 2016 garnishment judgment, or was some portion paid on account of the May, 2016 writ of garnishment? If the latter, how much?

The Court will hold a short trial to take evidence on these points, and then issue a final judgment.

### III.  CONCLUSION

Pursuant to § 547(e)(3) and the case law set out above, the Court will avoid the garnishment lien transfer, and the subsequent payment transfer, to the extent both occurred during the preference period. The Court will not follow the salary novation or "relation back" cases. Because of the incomplete record, the Court will schedule a trial on the few facts needed to enter an appropriate final judgment in this matter.

_____

Honorable David T. Thuma
United States Bankruptcy Judge

Entered: April 14, 2017

Copies to:

Diane Webb
P.O. Box 30456
Albuquerque, NM 87190

Pia Herring
P.O. Box 74
Cedar Crest, NM 87008